UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BARBARA LYNCH | CIVIL ACTION |
| VERSUS | NO. 18-5361 |
| FORGE FABRICATION SERVICES, LLC | SECTION A(3) |

## ORDER AND REASONS

The following motions are before the Court:

**Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 8)** filed by Defendant Forge Fabrication Services, LLC ("Forge"). Plaintiff Barbara Lynch opposes the motion (Rec. Doc. 18) and Forge replied (Rec. Doc. 29). This motion, noticed for submission on February 6, 2019, is before the Court on the briefs without oral argument.

**Rule 12(b)(6) Motion to Dismiss Claims Raised in Plaintiff's Amended Complaint (Rec. Doc. 32)** filed by Forge. Plaintiff opposes the motion (Rec. Doc. 38) and Forge replied (Rec. Doc. 42). This motion, noticed for submission on February 6, 2019, is before the Court on the briefs without oral argument.

Having considered the motions, memoranda of counsel, the oppositions, the replies, the record, and the applicable law, the Court finds that Defendant's **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 8)** and **Rule 12(b)(6) Motion to Dismiss Claims Raised in Plaintiff's Amended Complaint (Rec. Doc. 32)** are **GRANTED** in part and **DENIED** in part for the reasons set forth below.

**I.      Background**

Around December 18, 2017, Lynch received a raise and job promotion as an employee at Forge. (Rec. Doc. 31 Amended Complaint, ¶ 5). Contemporaneous with the raise, Lynch alleges

that a co-worker, Thomas Keegan, began to make harassing epithets concerning Lynch's race, gender, and age. (*Id.* at 10-15). Lynch also alleges that several co-workers began to refuse to cooperate with her which created a hostile work environment that impeded her ability to perform her job. (*Id.* at 14). After verbal complaints regarding her co-workers' behavior, Lynch sent an email to her supervisor, Marc Distefano. (*Id.* at 45). The following day, Forge terminated Lynch because of a "corporate restructure." (*Id.* at 48). Lynch alleges that her discharge was not because of a "corporate restructuring," but rather, the discharge was a retaliation for her complaint and related to her race, gender, and age. (*Id.* at 52-53).

Lynch brought the instant suit alleging claims pursuant to 42 U.S.C. § 1981. (Rec. Doc. 1 Complaint, ¶ 1). Lynch has since filed a nearly identical Amended Complaint alleging claims also pursuant to Title VII, 42 U.S.C. § 2000(e) et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Rec. Doc. 31, ¶ 1). Prior to the Amended Complaint, Forge filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After the Amended Complaint, Forge filed a second motion to dismiss pursuant to Rule 12(b)(6).

**II.    Legal Standard**

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. (citing *Bell*

*Atlantic Corp. v. Twombly,* 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id*. (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id*. (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id*. (quoting *Iqbal*, 129 S. Ct. at 1950).

**III.   Discussion**

In the first motion to dismiss, Forge contends that Lynch only asserted claims under 42 U.S.C. § 1981 which only prohibits harassment, discrimination and retaliation on the basis of race. (Rec. Doc. 8, p. 1). Forge also argues that Lynch has not alleged facts to state such a claim pursuant to 42 U.S.C. § 1981. (*Id.* at 2). In the second motion to dismiss, Forge argues that Lynch's complaint doesn't state any actionable harassment claim because: (1) the harassment Lynch alleges was not objective based on her protected characteristics; (2) Lynch does not allege that she was subjected to severe and pervasive harassment; and (3) Lynch does not allege facts from which one could plausibly conclude Forge knew or should have known of the alleged harassment. (Rec. Doc. 32, p. 1-2). Forge also argues that the Court should dismiss Lynch's retaliation claims because she has not plead sufficient facts to show that she engaged in a protected activity, and the Court should dismiss Lynch's discrimination claims because the

amended complaint fails to show her entitlement to a "cat's paw" theory of liability. (*Id.* at 2).

   A. **Harassment under Title VII, 42 U.S.C. § 1981, ADEA**

Harassment claims pursuant to Title VII, 42 U.S.C. § 1981, and the ADEA are analyzed under the same framework. *Deidol v. Best Chevrolet, Inc.,* 655 F.3d 435, 441 (5th Cir. 2011); *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). In order to establish a prima facie case of harassment constituting a hostile work environment, the plaintiff must show that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos De Venezuela*, 266 F.3d 343, 353 (5th Cir.2001). The Court notes that "a plaintiff need not make out a prima facie case of harassment in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir.2013). The Court needs to determine only whether Lynch "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; see *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 221 (5th Cir.2007).

For harassment to affect a term, condition or privilege of employment, the conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In determining whether a claim of a hostile work environment is actionable, the

reviewing court must consider all of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* at 787–788 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The discriminatory conduct must be severe or pervasive enough as to create an objectively hostile or abusive work environment. *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir. 2000).

The above inquiries serve to ensure that Title VII does not become a "a general civility code," *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), for it is well-settled that the mere utterance of "an ethnic or racial epithet which engenders offensive feelings in an employee" does not sufficiently alter the terms and conditions of employment in a way that violates Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775 at 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir1971)). Thus, Title VII is only violated when the workplace is "permeated with 'discriminatory intimidation, ridicule and insult' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l Passenger Railroad Co. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quoting *Harris v. Forklift Systems*, Inc., 510 U.S. at 21)).

In the Amended Complaint, Lynch asserts that Forge is liable for harassment she endured because of her race, age, and gender. As an African-American, Lynch asserts claims that she was subjected to harassing epithets about her race. (Rec. Doc. 31, ¶ 4). Lynch alleges that after she received a job promotion, her co-worker, Thomas Keegan, began to call her, "My G." (*Id.* at 12). Lynch states that she explicitly told Keegan the phrase was offensive because it was the

equivalent to saying, "My Nigger." (*Id*.). Lynch argues that Keegan would substitute "My G" for "My Girl." (Rec. Doc. 18, p. 3). After alerting Keegan that "My G" was racial harassment, Keegan calling Lynch "My Girl" was thenceforth racial harassment as well. (*Id.*). Also, Lynch states that when Keegan would say "Step it up," she thought the remark was exhibiting racial bias. (Rec. Doc. 31, ¶ 11). The conduct occurred between June 2017 and February 2018 with a majority of the comments between December 2017 and February 2018. (Rec. Doc. 18, p. 3). During this period, Lynch also alleges that Keegan along with three other employees refused to cooperate with Lynch impeding her ability to do her job. (Rec. Doc. 31, ¶ 14). Lynch perceived these comments to be pervasive and severe. (*Id.* at 13). In her amended and supplemental opposition, Lynch contends that she will amend the complaint to specify the number of times Keegan made harassing remarks. (Rec. Doc. 38, p. 9) She also states that she will amend the complaint to allege she was upset to the point of taking breaks after encounters with Keegan. (*Id.*).

As a forty-seven-year-old, Lynch also asserts claims that she was subjected to harassing epithets about her age. (Rec. Doc. 31, ¶ 4). Lynch alleges that Keegan would frequently tell her to "Step it up." (*Id.* at 11). These comments combined with the other alleged misconduct interfered with her work as she alleged that she stopped to discuss with Keegan why "My G" was offensive, other co-workers were not cooperating with her, and she tried to file several complaints. (Rec. Doc. 38, p. 5). Lynch concedes that Forge is correct in pointing out that she has not pled facts to suggest the frequency of these comments. (*Id*. at 2). She asserts that she will make a second amendment to the complaint to sufficiently plead the temporal facts regarding Keegan's harassing behavior. (*Id.* at 3).

Lastly, Lynch pleads that on five to ten occasions Keegan referred to her as "girl"

including remarks such as "Step it up, girl." (Rec. Doc. 31, ¶ 12). She states that she perceived these comments as bias against women. (*Id.*). This conduct allegedly constituted a pervasive and severe hostile work environment and impeded her ability to do her job. (*Id.* at 13).

The Court will not consider the various proposed amendments for additional facts that Lynch asserts in the Amended and Supplemental Opposition (Rec. Doc. 38). It is well-established that, in deciding whether to grant a motion to dismiss, this Court may not "go outside the complaint." *Rodriguez v. Rutter,* 310 Fed.Appx. 623, 626 (5th Cir. 2009) (quoting *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir.2003)). The Court concludes that Lynch failed to sufficiently plead specific facts on how the frequency and the content of the epithets were objectively severe and pervasive. The Fifth Circuit has held that courts should consider the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Stone v. Louisiana Dept. of Revenue*, 590 Fed.Appx. 332, 340 (5th Cir. 2015) (citing *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996). Lynch has failed to sufficiently plead facts regarding any of these factors. The Court declines to find a reasonable inference that the defendant is liable for the misconduct alleged.

### B. Retaliation under Title VII, 42 U.S.C. § 1981, ADEA

Retaliation claims pursuant to Title VII, 42 U.S.C. § 1981, and the ADEA are analyzed under the same framework. *Hackett v. United Parcel Service,* 736 Fed.Appx. 444, 452 (5th Cir. 2018). In order to state a claim for retaliation, the plaintiff must allege that her employer took an adverse employment action against her in retaliation for engaging in protected conduct. *Stone*, 590 Fed.Appx. at 341. An adverse employment action is defined as one that "a reasonable

employee would have found…materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington N & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). The Fifth Circuit defines Title VII and ADEA "protected activity" to include complaints to an employer specifically reporting harassment based upon race, sex, or age. *Harris-Childs v. Medco Health Solutions, Inc.,* 169 Fed.Appx. 913, 916 (5th Cir. 2006); see also, *Tratree v. BP North American Pipelines, Inc.*, 277 Fed.Appx. 390, 396 (5th Cir. 2008). It is essential for a court to find an element of causation between the complaint and the adverse employment action suffered. *Tratree*, 277 Fed.Appx. at 396. The Court notes that "a plaintiff need not make out a prima facie case of retaliation in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir.2013). The Court needs to determine only whether Lynch "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; see *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp*., 509 F.3d 216, 221 (5th Cir.2007).

Lynch alleges that her claims for retaliation began on February 1, 2018. (Rec. Doc. 31, ¶ 16). She identifies her discharge as a retaliation for emailing a complaint to her supervisor, Distefano. (*Id.* at 49). The complaint identified threats made by David O'Reilly, one of Forge's managing members. (*Id.* at 49). On February 1, 2018, Lynch spoke with O'Reilly about the way Keegan spoke to her. She asked O'Reilly if Keegan and other co-workers were treating her rudely because she is a woman. (*Id.* at 37). O'Reilly then held a joint meeting with Keegan, Lynch, and two other co-workers in which Lynch stated, "The teamwork is not reciprocated. Is it because I'm a female…" (*Id.* at 40). O'Reilly responded by saying that he didn't want to hear

that comment and it didn't matter. (*Id.* at 41).

On February 2, 2018, Lynch received a termination letter informing her that her position was "eliminated in [a] corporate restructure." (Rec. Doc. 31, ¶ 48). Lynch pleads that this is a retaliation by Forge for her complaint against O'Reilly because Forge, through O'Reilly, had same-day access to company emails including the one she transmitted to Distefano. (*Id.* at 47). She asserts that the termination was proximate to her protected complaint. (*Id.* at 52). Lynch supports her retaliation claim with allegations that within a month after her discharge, an email was disseminated regarding her position which was then filled by a younger white female. (*Id.* at 51-52).

The Court finds that Lynch properly alleged a protected activity. Lynch argues that she sent an email to her supervisor reporting co-worker behavior. (Rec. Doc. 31, ¶ 45). Lynch questioned if this behavior was based upon her sex and/or race. (*Id.* at 46). Although not ruling on the merits at this early stage, the Court also finds that she sufficiently alleged that an adverse employment action, termination, was closely proximate to her protected complaint. (*Id.* at 52). The Supreme Court has held that "temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation." *Ganheart v. Brown,* 740 Fed.Appx. 386, 389 (5th Cir. 2018) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). In these instances, however, the plaintiff carries the burden to prove that the protected activity was a but-for cause of the adverse action. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013)). The Court concludes that a fact finder may draw the reasonable inference that her termination the next day was out of a retaliation for her complaint. Again, at this early stage the complaint states a valid claim of retaliation for a sex-based harassment complaint and a race-based harassment complaint

pursuant to Title VII and 42 U.S.C. § 1981.

The Court dismisses claims for retaliation under the ADEA due to Lynch's failure to plead any factual allegations. Lynch asserts that she attempted to make several complaints for harassment due to her age, race, and gender; however, Forge foreclosed her ability to make these complaints. (Rec. Doc. 38, p. 17). In order for a plaintiff to successfully plead a retaliatory claim, she must have engaged in a protected activity such as reporting the behavior by way of a complaint. *Harris-Childs,* 169 Fed.Appx. at 916.

### C. Discrimination under Title VII, 42 U.S.C. § 1981, ADEA

"If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary co-workers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Roberson v. Alltel Information Services,* 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir.2000)). The plaintiff must plead sufficient facts to establish (1) a co-worker exhibited discriminatory animus, and (2) the same co-worker "possessed leverage, or exerted influence, over the titular decisionmaker." *Id.*

Lynch alleges that her termination "was motivated by the performance complaints of her three colleagues, primarily Keegan." (Rec. Doc. 31, ¶ 54). She alleges that Keegan's remarks based on her race, gender, and age animus were the "cat's paw" of O'Reilly's decision to terminate her. (*Id.*). The Court finds that though Lynch pleads factual allegations regarding Keegan and other co-workers' animus, she fails to articulate O'Reilly's position and that Keegan or any co-worker possessed any leverage. It is not clear from the face of the complaint who O'Reilly is. It is not clear from the complaint the identity of the individual who allegedly terminated Lynch. The only connection Lynch draws to O'Reilly and her termination is a blanket

allegation that he had "same-day access" to all company emails. (*Id.* at 47). O'Reilly had a conversation with Lynch in which he said, "If we have this conversation again, it will turn out badly for you;" however, Lynch doesn't allege any facts that O'Reilly was in a position to terminate her or that he in fact terminated her. The Court finds that Lynch failed to plead facts to sufficiently state a claim for "cat's paw" liability for any discrimination.

IV. **Conclusion**

Accordingly;

IT IS ORDERED that Defendant's **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 8)** and **Rule 12(b)(6) Motion to Dismiss Claims Raised in Plaintiff's Amended Complaint (Rec. Doc. 32)** are **DENIED** in part and **GRANTED** in part. Plaintiff's only claims that remain include retaliatory discharge based upon her race and sex pursuant to Title VII and 42 U.S.C. § 1981.

New Orleans, Louisiana, this 28th day of February, 2019

                                        JUDGE JAY C. ZAINEY
                                  UNITED STATES DISTRICT JUDGE